In the Matter of DELINQUENT TAXES ON REAL PROPERTY IN THE CITY OF JUNEAU, ALASKA, for 1951, 1952, and 1953.

No. 7127-A.

District Court, Alaska
First Division, Juneau.

Oct. 1, 1954.

Howard D. Stabler, Juneau, Alaska, for petitioner.

Faulkner, Banfield, & Boochever, Juneau, Alaska, for Nick Rocovich.

FOLTA, District Judge.

The City of Juneau has presented its delinquent tax roll and petition for an order of foreclosure of its liens and sale of the property listed therein, in accordance with Sec. 16-1-123, A.C.L.A.1949. Nick Rocovich, hereinafter referred to as the protestant, challenges the validity of the assessment and levy upon properties consisting of two apartment buildings and a dwelling, built in 1912, on the ground that the assessed valuation placed thereon exceeds the actual value. These properties, together with the land, were acquired in 1943 for $16,000. Since the controversy concerns principally the apartment buildings, the discussion will, in the main, be confined to them.

In 1945 there was a systematic revaluation of all real property in Juneau by one Henretta, according to a formula which took into account the type of construction, cubical dimensions, age, and a flat rate for assessment purposes. This formula has been applied by the City ever since and assessed valuations fixed at approximately 40% of the actual value. The cubical capacity of the protestant's apartment buildings in 1945 was 51,040 feet. For valuation purposes the rate adopted for that type of construction and age of building was fixed at 36¢ a cubic foot. Depreciation was allowed at 53.3%, resulting in an assessed valuation of $8,573. In 1951, the protestant made extensive repairs and alterations, resulting in increasing the cubical capacity of the apartment buildings to 94,205 cubic feet, at a cost of $28,653.50, the protestant himself performing most of the labor. Pursuant to the policy of the City of exempting new construction, one of the buildings was exempted from the tax for 1951. For 1952 and 1953, the buildings were assessed at $32,500. It appears that by that time the rate for valuation purposes had been established at $1.20 a cubic foot for new construction and 69¢ for assessment purposes. However, presumably because the improvements referred to had been incorporated into old buildings, the rate fixed for the protestant's apartment buildings for assessment purposes was reduced to 34½¢ a cubic foot, which brought the assessed valuation for 94,205 cubic feet down to $32,500. It should be noted here that since this reduction in the rate (also referred to in the trial as depreciation), was not limited to the 43,165 cubic feet added to the old buildings, but was applied to the entire structure, it would appear that so far as the original cubical capacity of the buildings is concerned, the protestant received a benefit to which

he was not entitled, because depreciation was allowed on the old portions of the buildings.

The protestant objected in 1952 and 1953 to the assessed valuation of $32,500 on his apartment buildings. Following his protest in 1953, the assessor re-examined the property and increased the assessed valuation placed upon the personal property from $6,000 to $7,500. It appears that this was the proverbial straw.

In support of the protestant's objections, testimony was produced from which it could be inferred that in comparison with the valuations placed on other apartment buildings, the assessed valuation was excessive, and indeed it quite clearly appears that this was true as to personal property. Toner, a tax appraiser, testified that the actual value of the apartment buildings in 1953 was between $40,000 and $45,000, and that the fair assessed valuations of the property would be $19,917 for the apartment building and $4,862 for the residence. The protestant testified that the actual value of all the properties, real and personal, was but $47,000. On behalf of the City, it was shown that the buildings and contents are insured in the sum of $42,000, that the protestant was willing to compromise for an assessed valuation of $33,493.80, and that the protestant's properties were valued according to the established formula, as in the case of all other property.

An examination of the formula used by Toner discloses that the reason why there is a variance between the assessed valuations fixed by Toner and the City is that Toner allowed depreciation at the rate of 35% since 1945, whereas the City's position is that the appreciation in value of all property in Juneau sufficed to more than offset the depreciation since 1945, and it has therefore uniformly refused to allow depreciation. It also appears that the disparity between the assessed valuations of the MacKinnon and Fosbee Apartment buildings may be accounted for, at least to some extent, by the absence of any improvements or alterations since 1945. Assuming, however, that some inequality does exist, it does not appear that it was the result of discrimination in the constitutional sense or of wilfulness on the part of the City, but rather the unavoidable consequence of applying the formula to varying conditions over a considerable period of time. A review of the tax history of the properties involved convinces me that the City has acted in good faith and has dealt with them in substantially the same manner as with property generally. I conclude, therefore, that the protestant has failed to sustain the burden cast upon him by Sec. 16–1–124, A.C.L.A.1949, of proving that the assessed valuations placed upon his properties are unjust or inequitable.